UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

PAUL DESROCHERS,
  Plaintiff,

vs.                CIVIL NO. 2:06-CV-15228

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,  HON. JOHN FEIKENS
  Defendant          MAG. JUDGE. STEVEN D. PEPE.
_____/

## Report and Recommendation

### I. Background

Paul Desrochers brought this action under 42 U.S.C. § 405(g) and § 1383(c)(3) for judicial review of the Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Both parties have filed motions for Summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

### A. Procedural History

Plaintiff filed an application for DIB on July 15, 2003, alleging disability due to asthma, reflux, cough syncope, sleep apnea and a pacemaker. with an onset date of October 4, 2001 (R. 49, 56 and 78)[1]. Plaintiff's claims were initially denied on September 11, 2003, and he requested

---

[1] An earlier application of August 12, 2002, was denied and apparently no hearing sought (R. 46, 31-35).

1

a hearing (R. 25 and 30). Administrative Law Judge ("ALJ") Alfred H. Varga conducted a hearing on July 6, 2005, during which Plaintiff was represented by attorney, Barry Keller. Vocational Expert (VE) Elizabeth Pasikowski also testified (R. 447-69). On November 18, 2005, ALJ Varga issued an opinion denying Plaintiff's applications (R. 13-18). The Appeals Council denied review on September 21, 2006 (R. 4-6).

**B.     Background Facts**

      **1.     Plaintiff Testimony**

      *Disability Application*

Plaintiff was born June 25, 1955, and was forty six years old at the time of his hearing (R. 13). He has a GED and two years of college education (R. 62). Plaintiff worked as an assembler for General Motors maintaining since 1984 (R. 79). His Functional Report noted his activities include watching T.V., computer use, visiting with people, fishing, driving, preparing meals and seldom shopping (R. 67-76).

      *Testimony at Hearing*

At the hearing, Plaintiff testified that he was "forced out" of working because his employer, General Motors, could not place him in a job to accommodate his restrictions (R. 431-432). When he left the job in October of 2001, Plaintiff claims, he was able to work only 10-15 minutes at a time then requiring a break by sitting down, and at times he dozed off at work because of his sleep apnea (R. 434). To help with the sleep apnea, Plaintiff utilized a breathing machine though he found it difficult to use (R. 435). To help offset the fatigue, he took daily naps of 10-30 minute duration (R. 438).

His other condition the cough syncope, takes hold of him in a sudden and unexpected

2

way. When he sips a drink coughing might start requiring him to lie down to avoid passing out (R. 435-36). He has had this condition since 1995 or 1996 with coughing episodes occurring a couple times a week (R. 436-7). The daily medication provided for treatment that helps control the episodes, but Plaintiff does not take the medication because of the side effect he describes as being out of it, losing focus and loss of function (R. 443).

His health struggles are a daily battle with the weather as he assesses whether he can go outside: when it is hot he is susceptible to an asthma attack, when it is cold outside he panics which can then turn into an asthma attack (R. 438 and 442). He rarely leaves the house, other than three times a week for therapy for his shoulder (R. 440).

Because of the unpredictability of his medical condition, Plaintiff testified that he would not be capable of working at a regular job, managing his day-to-day life at home is the most challenge he can handle (R. 439). His driver's license is unrestricted though after an incident in the car where he perceived that he passed out for a minute or two, he decided that he would no risk driving (R. 441).

A few weeks prior to the hearing, Plaintiff had smoked a pack to a pack and half per day until a few weeks prior to the hearing when he says he quit (R. 443).

**2.     Medical Evidence**

On July 24, 2001, when seen at the GM Pontiac Metal Fabricating Division clinic for a swelling in the left elbow it was noted that Plaintiff was "doing well with asthma." (R. 196). On December 5, 2001, Dr. Goldstein recommended that Plaintiff remain off of work from October 5, 2001, to February 28, 2002, because of asthma (R. 189). He was seen by Dr. Lisa Dietz, D.O. on August 9, 2001, for leg and ankle swelling which was unexplained (R. 195). On site medical

director Michael Goldstein, MD, placed significant job restrictions on Plaintiff on October 4, 2001 (R. 194). An October 25, 2001, entry noted more shortness of breath and that he was not responding to treatment for his sleep apnea (R. 191). Dr. Dietz noted work restrictions due to Plaintiff's asthma and chronic back problems on November 26, 2001 (R. 190).

In January 2002, Robin Elkus, M.D., noted that Plaintiff did not tolerate CPAP (Continuous Positive Airway Pressure) treatment for his sleep apnea and continued to have shortness of breath, worse with exposure to chemicals or scents. (R. 310). Plaintiff's coughing was fairly stable, and that his episodes of syncope were intermittent (R. 310). In her evaluation of his chest functioning, she noted that Plaintiff smoked 10 cigarettes a day for the past few weeks and two packs per day prior to that (R. 310). Dr. Elkus observed that Plaintiff's condition would not be controlled unless he quit smoking, and that he had no wish to do so (R. 311). Tests results from the January visit indicated moderate obstructive lung disease, and were consistent with emphysema, as well as an asthma component (R. 305).

Dr. Elkus saw Plaintiff again in March of 2002, when Plaintiff reported that he had not had a cough syncope incident since their last meeting (R. 305). Plaintiff continued to smoke and had shortness of breath with minimal exertion. Dr. Elkus noted that unless he ceased smoking his lung function would continue to deteriorate and his cough would not improve dramatically (R. 306). Dr. Elkus changed Plaintiff's medication for his cough, and indicated he would undergo a formal BiPAP procedure because Plaintiff was not compliant with it in the past (R. 305-06).

In May 2002, Plaintiff returned to Dr. Elkus for a follow-up visit, and reported that he was walking three miles daily and had improved breathing. He also reported that he had "extremely" good night sleep using a BiPAP mask at night. Dr. Elkus observed only mild

4

wheezing and noted that despite Plaintiff's smoking, treatment was improving his symptoms of asthmatic bronchitis and sleep apnea. Dr. Elkus also specified that Plaintiff's condition would improve with weight loss (R. 302). A chest X-ray taken at that time was negative and showed clear lungs (R. 356).

In August 2002 Plaintiff underwent a consultative examination performed by Sidney Schucter, M.D., for the GM National Benefits Center (R. 295). Dr. Schucter observed Plaintiff's breathing, reviewed his pulmonary function studies, confirmed diagnoses of cough syncope and COPD and noted Plaintiff's continued smoking. Dr. Schucter concluded that Plaintiff's COPD did not disable him from his last job.

That same month, Dr. Elkus also saw Plaintiff and noted that even with his smoking, the coughing was "controlled" through use of medication. Plaintiff was again admonished to quit smoking (R. 300).

In January 2003, Dr. Dietz examined Plaintiff pointing out that during the period Plaintiff had quit smoking, he did not require medication to control his cough. At the time of the January visit, Plaintiff had resumed smoking (R. 298). Dr. Dietz encouraged Plaintiff to stop smoking (R. 298-99).

In May 2003, Plaintiff denied shortness of breath and complained primarily of back pain (R. 319). A June 2003 chest X-ray showed signs of COPD but no evidence of infiltrates and no acute processes.

On July 16, 2003, Dr. Elkus saw the Plaintiff for a follow-up for his chronic asthmatic bronchitis. Plaintiff continued to suffer from the condition, being sick every two weeks with chills, increased phlegm and nasal drainage. She noted on the positive side that Plaintiff

decreased his cigarette use to just several per day, on the negative side, Plaintiff was not successful in losing weight (R. 421). He weighed 255 pounds and was earlier reported to be 5' 6" tall (R. 297).

In August 2003, Plaintiff underwent a consultative examination performed for Michigan's DDS by Brandon Russell, D.O. who concluded that Plaintiff maintained a full range of motion, ambulated without difficulty, maintained the ability to lift objects, suffered from no dexterity loss. Dr. Russell concluded that in addition to Plaintiff's residual strengths, he had a moderate degree of impairment due to the asthma and shortness of breath (R. 412). Plaintiff also indicated to the doctor that he continued to smoke every day (R. 408).

Plaintiff continued to see Dr. Elkus for follow-up visits. In July 2003, he reported to her that the prescribed medication made improvements even though he did not take it consistently because he was away from home much of the time (R. 419). A syncope episode occurred six weeks prior to the visit but Dr. Elkus stated that overall his condition was better and that he could predict when another episode would occur (R. 419). Dr. Elkus encouraged him to use his medication and BiPAP and to stop smoking (R. 420).

The March 2004 visit with Dr. Elkus noted that Plaintiff's cough and shortness of breath were worsening, Plaintiff did not use his BiPAP as directed and continued to smoke one to two packs of cigarettes a day, a habit the doctor told him he must stop (R. 418).

In June 2004, when Plaintiff returned to Dr. Elkus's office, he still smoked at the same rate as before, but reported that his breathing was "fairly good" and his cough was "doing fairly well" with the use of the prescribed medicine (R. 414). A pulmonary function test showed a significant decrease in lung function in comparison to Plaintiff's last test in January 2002 (R.

6

414). She warned that Plaintiff if he did not stop smoking he would be a "pulmonary cripple" in approximately 10 to 15 years (R. 415).

### 4. <u>Vocational Evidence</u>

VE Pasikowski classified Plaintiff's past works as a grinder, wire harness assembler, panel installer and relief man as unskilled medium work, his coordinator job as semiskilled medium and his painter work as unskilled light (R. 448). The ALJ asked the VE if after hearing the testimony and reviewing Plaintiff's file the Plaintiff possessed skills that could readily be transferred to other jobs in other industries. VE Pasikowski responded that such positions would be available to Plaintiff (R. 448).

ALJ Varga asked a hypothetical question assuming a person who is the same age, sex, educational level, work experience, skill level and also the testimony at the hearing if could return to Plaintiff's past work. VE Pasikowski responded that such a person could not because Plaintiff testified he would doze off during the day, lose focus and passed our regularly (R. 448-49).

The ALJ posed a second hypothetical assuming a job possibility with light exertion that would be performed indoors in a climate controlled environment with limited pollutants, no driving or use of hazardous machinery, implementing simple and routine tasks with a sit/stand option (R. 450). VE Pasikowski stated that there would be significant jobs in the national and regional economy including assembler (3600), sorter (2000) and packer (1500) (R. 450-51). Given a vocational background similar to Plaintiff's it would take less than 30 days to train someone to perform these jobs (R. 451).

7

Plaintiff's attorney asked the VE to consider whether those jobs would be available to a person who could not work on a repetitive basis and would be absent from work ten to eleven days per year. VE Pasikowski responded that such a person could not perform those jobs (R. 451-52).

4. **ALJ Varga's Decision**

ALJ Varga found that Plaintiff met the insured status requirements of the Social Security Act through November 18, 2005, and had not engaged in substantial gainful employment since 2002 (R. 17). He found that the medical evidence established that the Plaintiff has chronic asthmatic bronchitis, COPD and obstructive sleep apnea, but did not have an impairment or combination of impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, or Regulations No. 4 (R. 17).

Plaintiff had the RFC to perform unskilled light work offering a simple routine, sit/stand option, pollutant-free environment and not requiring driving, operation of or work near hazardous machinery, climbing or working at unprotected heights (R. 17). While Plaintiff could not perform his past relevant work, Plaintiff could perform a significant number of light unskilled jobs identified by the VE (R. 18). ALJ Varga found that Plaintiff was not disabled within the meaning of the Social Security Act.

**II. Analysis**

**A. Standards of Review**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and*

*Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### B. Factual Analysis

In his motion for summary judgment, Plaintiff argued that the ALJ's decision was not supported by substantial evidence because the hypothetical posed to the VE did not accurately represent the Plaintiff's impairments, specifically the ALJ did not include the medical diagnoses of cough syncope and COPD in his second hypothetical posed to the VE. Plaintiff believes that if these two medical conditions had been included in the hypothetical then the VE would have concluded that there were no jobs that Plaintiff could perform.

The ALJ's hypothetical, while it did not include the formal diagnoses of cough syncope and COPD did control for these conditions with the work parameters of providing a pollutant-free environment, no extremes of temperature, no driving, no working at unprotected heights or around dangerous machinery, which restrictions are also consistent with those identified by the two GM physicians. An ALJ is not obligated to include formal diagnoses or lists of claimants' medical conditions in an RFC assessment or hypothetical questions posed to the VE. *Webb v. Comm'r of Soc Sec*, 368 F 3d 629, 633 (6th Cir 2004).

Furthermore, the ALJ was not obligated to include conditions in a hypothetical that he

9

found to be incredible or inconsistent with the record as a whole such as Plaintiff's self assessment regarding his fatigue and cough syncope.   Subjective evidence is only considered to "the extent...[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence (20 C.F.R. 404.1529(a))" *Duncan v. Secretary of Health & Human Servs.,* 801 F.2d 847, 852 (1986).  While the issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion when making a determination of disability, (*Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*,  336 F.3d 469, 476 (6th Cir. 2003), there are limits on the extent to which an ALJ can rely on "lack of objective evidence" in discounting a claimant's testimony.

Subjective complaints of a claimant can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record that would explain such pain. *See Young v. Secretary of Health & Human Servs.,* 925 F.2d 146, 150-51 (6th Cir. 1990); *Duncan,* 801 F.2d at 852.  While the underlying condition must have an objective basis, neither the Social Security Act nor the regulations require a claimant to prove the degree of pain and limitations by objective medical evidence.  Thus, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[2].

---

[2]Section 404.1529(c)(2),11  29 C.F.R. § 404.1529(c)(2) states:
We will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.

*See also Duncan*, 801 F.2d at 853; *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (*en banc*); *Benson v. Heckler,* 780 F.2d

Yet, in determining the existence of substantial evidence, it is not the function of the federal court to try cases *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In *Jones* the Court noted that an ALJ can reject a claimant's credibility on pain and other symptoms, and exclude these from the hypothetical question to the VE, if the ALJ's reasons are adequately explained. *Jones,* 336 F.3d at 476.

In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific. The ALJ must say more than the testimony is not credible.

In addition to finding claimant's allegations not wholly credible because they were not supported by the objective diagnostic or clinical evidence of record, ALJ Varga also found claimant's allegations not consistent with his reported activities of daily living (R. 16).

ALJ Varga discounted the alleged severity of Plaintiff's breathing and sleep problems because of his refusal to follow prescribed treatment. Plaintiff admitted that he failed to consistently use the BiPAP even though the treatments helped his breathing. In addition, his coughing was improved with medication (R. 300 and 302). ALJ Varga notes that Plaintiff's breathing problems never required emergency treatment or hospitalization. Nor were they of such a significant to Plaintiff that he would follow his doctor's consistent advice to stop smoking. Plaintiff's self appraisal of fainting was discounted because of no evidence of

---

16, 17 (8th Cir. 1985); *Halpin v. Shalala,* 999 F.2d 342, 346 (8th Cir. 1993).

treatment or evaluation. Indeed, this serious episode is nowhere mentioned in the medical record. Given these reasons stated for discounting Plaintiff's credibility it is not legally appropriate for this Court to overturn the ALJ's credibility finding. The ALJ's decision finding Plaintiff not disabled is supported by substantial evidence.

S

**IV.     Recommendation**

For the reasons stated above, it is Recommended that Plaintiff's Motion for Summary Judgment be DENIED and Defendant's Motion for Summary Judgment be GRANTED. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response

shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 27, 2007          s/ Steven D. Pepe
                                   Steven D. Pepe
                                   United States Magistrate Judge

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 27, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:James A. Brunson, AUSA, Barry F. Keller, Esq., and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, Il 60606

                                         s/ James P. Peltier
                                         Courtroom Deputy Clerk
                                         United States District Court
                                         600 Church St., Room 112
                                         Flint, MI 48502
                                         810-341-7850
                                         E-Mail pete_peltier@mied.uscourts.gov